UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEQUAN ALAN KEMP,

        Petitioner,                       Case No. 2:20-cv-12614
                                            Honorable Linda V. Parker

v.

KIM CARGOR,[1]

        Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, ISSUING A CERTIFICATE OF APPEALABILITY ON GROUND III, AND GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Michigan prisoner Dequan Alan Kemp has filed a pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following a jury trial in the Wayne County Circuit Court, Kemp was convicted of first-degree murder and possession of a firearm during the commission of a felony in violation of Michigan Compiled Laws §§ 750.316(1)(a) and 750.227b(1), respectively. The state court sentenced Kemp to life without parole for the murder conviction, as well as two years for the felony-firearm conviction.

---

[1] The caption is amended to reflect the proper respondent in this case, the warden where Kemp is currently incarcerated. *See* Rules Governing § 2254 Case, Rule 2(a), 28 U.S.C. foll. § 2254.

In his habeas petition, Kemp claims his rights to confront witnesses and to a fair trial were violated when the preliminary examination testimony of the key prosecution witness was read into the trial record and he was prevented from impeaching that witness with prior inconsistent statements.  Kemp also argues insufficient evidence supports his first-degree murder conviction.

Because the Michigan Court of Appeals' decision denying Kemp's claims was neither contrary to nor an unreasonable application of Supreme Court precedent, the petition for a writ of habeas corpus is denied.  The Court denies Kemp a certificate of appealability with respect to the first two grounds for relief in his petition but grants him a certificate of appealability as to his third ground for relief.  Kemp is granted leave to proceed on appeal in forma pauperis.

## I.    Background

The Michigan Court of Appeals summarized the facts of Kemp's case as follows:

> This case arises from the fatal shooting of Emmet Conner, Jr. (Conner) outside of his house in Detroit.  Defendant borrowed Conner's pickup truck one morning.  Defendant used the truck until the middle of the afternoon and returned it to Conner's house when he was finished.  After defendant returned the truck, Conner and defendant got in an argument because the truck almost was out of gas when defendant returned it.  During this argument, defendant took out a gun and shot at Conner five times.  Conner fell to the ground after the second shot and defendant continued to shoot at Conner.  Conner was hit with three bullets, two of them were independently fatal. After the shooting, defendant fled the scene.

2

*People v. Kemp*, No. 342244, 2019 WL 3244092, at *1 (Mich. Ct. App. July 18, 2019).  Pertinent to two of Kemp's claims, the state court also reported that "[t]he prosecution was unable to locate the only eyewitness to the shooting, Darryll Baldwin (Baldwin), in order to compel his testimony at trial, and the parties were required instead to rely on [Baldwin's] testimony at the preliminary examination." *Id.*  Baldwin's sister, Darshaye Baldwin, is Kemp's girlfriend.  (ECF No. 8-10 at PageID 687.)

On direct appeal, Kemp argued that: (1) the trial court erred by admitting Baldwin's preliminary examination testimony at trial and that he was entitled to a "missing witness" jury instruction; (2) his constitutional rights to confront Baldwin and to present a defense were denied; and (3) insufficient evidence supported his first-degree murder conviction.  The Michigan Court of Appeals affirmed his convictions.  *Kemp*, 2019 WL 3244092, at *6.  In a standard form order, the Michigan Supreme Court denied him leave to appeal.  *People v. Kemp*, 936 N.W.2d 303 (Mich. 2019).

Kemp filed a timely federal habeas petition, raising the following grounds for relief:

I.   The trial court reversibly erred by allowing the preliminary examination testimony of the key prosecution witness to be read at trial.  The trial court found police exercised due-diligence, and Mr. Kemp was thereby denied the missing-witness instruction [as found in Michigan Criminal Jury Instruction 5.12], and his state and federal constitutional rights

3

to a fair trial by a properly-instructed jury, Sixth Amendment right of confrontation, and Fourteenth Amendment due process right to defend against the charges.

II.   The trial court reversibly erred in denying Appellant his due process right to present a defense under US Const, Am V, XIV; and [Michigan] Const. 1963, Art I, §§ 17, 20, when the court precluded the defense from impeaching the sole eyewitness – who had been declared unavailable by the trial court and whose preliminary examination testimony was read into the record – with a prior inconsistent statement.

III.   The evidence was not legally sufficient to prove beyond a reasonable doubt a premeditated and deliberate intent to kill. Mr. Kemp's guarantees of due process under the 14th Amendment and Const. 1963, Art. I, § 17, require that the first-degree murder conviction be reversed.

(ECF No. 1 at PageID 15.)

## II.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standard of review federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions.  AEDPA provides in relevant part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of the petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (quoting *Williams*, 529 U.S. at 409). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given

5

the benefit of the doubt.'"  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).  To obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*.; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014).  Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015).

Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the

Supreme Court. *Harrington*, 562 U.S. at 101. Because the requirements of clearly established law are to be determined solely by Supreme Court precedent, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam) (quoting 28 U.S.C. § 2254(d)(1)); *see also Lopez v. Smith*, 574 U.S. 1 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

"[T]he state court's factual findings are presumed correct unless rebutted by clear and convincing evidence." *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013) (citing 28 U.S.C. § 2254(e)(1); *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004)). Finally, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.   Analysis

#### A.   Admission of missing witness's prior testimony

Kemp argues first that the trial court erred in admitting Baldwin's preliminary examination testimony into the record and in finding that the prosecution exercised due diligence searching for Baldwin. Kemp asserts these

7

decisions violated his rights under the Confrontation Clause of the Sixth Amendment, as well as his rights to a fair trial and a properly instructed jury.

The Sixth Amendment guarantees criminal defendants the right to confront witnesses against them, which requires "testing in the crucible of cross-examination." *Crawford v. Washington*, 541 U.S. 36, 61 (2004). To that end, the Supreme Court has observed that "the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 53-54. "[A] witness is not 'unavailable' for purposes of the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain [the witness'] presence at trial." *Hardy v. Cross*, 565 U.S. 65, 69 (2011) (quoting *Barber v. Page*, 390 U.S. 719, 724-725 (1968)) (ellipsis omitted).

Regarding that effort, "the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry . . .." *Id.* at 71. Notably, *Hardy* was a habeas case. That status led the Supreme Court to conclude that "the deferential standard of review set out in 28 U.S.C. § 2254(d) does not permit a federal court to overturn a state court's decision on the question of unavailability merely because the federal court identifies additional steps that might have been taken [to secure the witness's attendance at trial]." 565 U.S. at 72.

In Kemp's case, the Michigan Court of Appeals reviewed the efforts taken to obtain Baldwin's presence at trial. *Kemp*, 2019 WL 3244092, at *2-3. These included a police detective making multiple attempts to locate Baldwin, the issuance of a witness detainer, and the expenditure of "over forty man hours or more of . . . police officers" attempting to find him "despite Baldwin's repeated statements that he would not appear to testify at trial." *Id.* The court concluded Baldwin was correctly deemed an "unavailable witness" and that "the prosecution had exercised due diligence[.]" *Id.* at *2.

In addition to establishing a witness's unavailability, to avoid constitutional injury the defense must have had a prior opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 54. The admission of a witness's testimony from a preliminary hearing may be found constitutional, especially where "the witness was under oath; the defendant 'was represented by counsel . . . [who] had every opportunity to cross-examine [the witness] as to his statement;' and 'the proceedings were conducted before a judicial tribunal equipped to provide a judicial record of the hearings.'" *Al-Timimi v. Jackson*, 379 F. App'x 435, 438-39 (6th Cir. 2010) (quoting *California v. Green*, 399 U.S. 149 (1970)).

Here, the preliminary examination transcript as read into the trial court record reflects that defense counsel questioned Baldwin during cross-examination, including about having been in prison and on parole. (ECF No. 8-9 at PageID 550-

9

54.)  Defense counsel also impeached Baldwin over his initial lies to police, bringing out that Baldwin initially told the police that he did not know what had happened and that Kemp had not shot the victim.  (*Id.* at PageID 552-53.)  Counsel also challenged Baldwin's ability to observe the shooting, questioning Baldwin about a large truck which separated him from the victim and Kemp.  (*Id.* at PageID 553-54.)  All the factors listed in *Al-Timimi* are present here, including Kemp's representation by the same attorney at the preliminary examination and at trial. *See Al-Timimi*, 379 F. App'x at 438.

The state court thus reasonably found that the prosecution was duly diligent, and that Kemp "had an opportunity to cross examine Baldwin at the preliminary examination." *Kemp*, 2019 WL 3244092, at *2-3.  Kemp was not denied his confrontation rights.

Kemp's final argument in his first ground for relief is that a "missing witness" instruction was wrongfully omitted from his trial.  That instruction informs the jury "that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case." *People v. Eccles*, 677 N.W.2d 76, 83 (Mich. Ct. App. 2004) (citation omitted).  The instruction should be given when the prosecutor failed to exercise due diligence to produce a witness. *Id.*

But again, "[d]ue diligence is the attempt to do everything reasonable, not everything possible, to obtain the presence of res gestae witnesses." *People v.*

10

*George*, 342 N.W.2d 908, 910 (Mich. Ct. App. 1983); *see also Hardy*, 565 U.S. at 72.  This Court cannot conclude that the state appellate court unreasonably found that the prosecution was duly diligent.

Finally, no clearly-established Supreme Court precedent obligates a trial court to provide a missing witness instruction as a matter of federal due process when a potential witness is unavailable for trial.  *See Stadler v. Curtin*, 682 F. Supp. 2d 807, 821-822 (E.D. Mich. 2010).  Kemp is not entitled to habeas relief on this issue.

### B.    Lack of opportunity to impeach the eyewitness

Kemp next argues that his Sixth and Fourteenth Amendment rights to present a defense were violated when the trial court ruled he could not impeach Baldwin, the sole eyewitness, with his prior inconsistent statement to police. When defense counsel asked police officer Tracy Weinert at trial about Baldwin's first statement to her, in which Baldwin denied being present during the shooting, the trial court precluded the statement as inadmissible hearsay.  (ECF No. 8-10 at PageID 676-67.)  Evaluating this type of claim in the habeas context, the Sixth Circuit explained that "[a] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of

11

bias on the part of the witness." *Miller v. Genovese*, 994 F.3d 734, 742 (6th Cir. 2021) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)).

In determining that the trial court did not err in excluding the hearsay evidence, the Michigan Court of Appeals reasoned:

> Baldwin's initial statement to P.O. Weinert . . . already was presented to the jury when the prosecutor and defendant's trial attorney questioned Baldwin about it at the preliminary examination and Baldwin admitted that what he told P.O. Weinert on February 17, 2017, was not the truth. As such, when defendant's trial attorney questioned P.O. Weinert about Baldwin's February 17, 2017, comments regarding Conner's shooting, the evidence was cumulative because the jury had already been presented with evidence of Baldwin's inconsistent statements through his preliminary examination testimony which had been read to the jury.

*Kemp*, 2019 WL 3244092, at *4. As explained in the prior section, Kemp was not prevented from impeaching Baldwin's testimony. Therefore, the state court was not unreasonable in finding no violation of his right to present a defense. Kemp is not entitled to habeas relief on this issue.

## C. Sufficiency of the evidence

In his third and final ground in support of his request for habeas relief, Kemp argues that the evidence admitted at trial was legally insufficient to prove premeditation and deliberation to support his first-degree murder conviction.

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (citing *In Re Winship*, 397 U.S. 358 (1970)). Under AEDPA, however, a

habeas court's "review of a state-court conviction for sufficiency of the evidence is very limited." *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018). Sufficiency-of-the-evidence claims "face a high bar in habeas proceedings because they are subject to two layers of deference[.]" *Tackett v. Trierweiler*, 956 F.3d 358, 366 (6th Cir. 2020).

The first layer is direct appeal, where the critical inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*, 443 U.S. at 319) (emphasis in original). "This standard 'must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Id*. (quoting *Jackson*, 443 U.S. at 324, n. 16). AEDPA provides the second layer of deference: "[O]n habeas review, a federal court may . . . overturn a state court decision . . . only if the state court decision was objectively unreasonable." *Tackett*, 956 F.3d at 367 (quoting *Coleman v. Jackson*, 566 U.S. at 651).

When evaluating sufficiency-of-the-evidence claims, the habeas court "is not at liberty to reweigh the evidence or reassess the credibility of witnesses." *Smith*, 962 F.3d at 205 (citing *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)). "Attacks on witness credibility are simply challenges to the quality of the

government's evidence and not to the sufficiency of the evidence." *Id.* (quoting *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002)).  Finally, it is the job of the factfinder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Cavazos v. Smith*, 565 U.S. 1, 7 (2011); *Martin*, 280 F.3d at 618; *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").

To convict a defendant of first-degree murder in Michigan, the state must prove that the defendant's intentional killing of another was deliberate and premeditated.  *See Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002) (citing *People v. Schollaert*, 486 N.W.2d 312, 318 (Mich. Ct. App. 1992)).  The Michigan courts give "premeditation and deliberation" their "ordinary meaning": "to premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v. Oros*, 917 N.W.2d 559, 565 (Mich. 2018) (brackets omitted) (quoting *People v. Woods*, 331 N.W.2d 707, 715 n.2 (Mich. 1982)).  Whether these elements have been satisfied must be decided by the fact finder "from *all* facts of the case." *Id.* (emphasis in original) (quotation marks and citation omitted).

"Premeditation and deliberation may be established by an interval of time between the initial homicidal thought and ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a 'second look.'" *Id.* at 566 (quoting *People v. Gonzalez*, 664 N.W.2d 159, 163 (Mich. 2003); *People v. Tilley*, 273 N.W.2d 471, 474 (Mich. 1979)).  The interval of time required for premeditation and deliberation can be as small as a few seconds, "but it is within the province of the fact-finder to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look." *Id*.

Here, the Michigan Court of Appeals "explicit[ly] refer[red]" to the elements of first-degree murder, as *Jackson* requires.  *Smith*, 962 F.3d at 205.  Those elements are "(1) the intentional killing of a human (2) with premeditation and deliberation."  *Kemp*, 2019 WL 3244092, at *5 (citing *Oros*, 917 N.W.2d at 565). The state court found sufficient evidence to support the second element, reasoning:

> When viewing the evidence in the light most favorable to the prosecution, defendant and Conner argued about whether defendant put enough gas in Conner's truck.  During the course of this argument defendant took out a gun and shot at Conner five times.  Three of those shots struck Conner and two of them were independently fatal. Baldwin did not see the first shots, but he did see defendant shoot at Conner after Conner fell to the ground.  Defendant clearly had the intent to shoot at Conner and continued to shoot at Conner after Conner fell to the ground.  Because defendant shot at Conner multiple times, he had an opportunity to take a "second look" at his actions after he drew his gun and after each shot he took at Conner.  *See Oros*, 502 Mich. at 240-243.  Defendant had multiple opportunities to consider what he was doing and a rational jury could have found

15

beyond a reasonable doubt that defendant's actions were premeditated and deliberate.

*Id.* (citations omitted).  The state court's reasoning is problematic given the paucity of evidence regarding a time interval between the shots fired, and the state court's misapprehension of *Oros* to conclude multiple shots provided Kemp an opportunity for a series of "second look[s]."  Nevertheless, for the reasons discussed *infra*, this Court must find its conclusion not unreasonable and conclude that Kemp is not entitled to habeas relief on this claim.

The "second look" interval may be "mere[] seconds[,]" *Peoples v. Lafler*, 734 F.3d 503, 518 (6th Cir. 2013) (quoting *People v. Berthiaume*, 229 N.W.2d 497, 500 (Mich. Ct. App. 1975)), or "even . . . as short as 'one second[,]'" *Id.* (quoting *People v. Tilley*, 273 N.W.2d 471, 474 (Mich. 1979)).  However, at Kemp's trial, no evidence was admitted as to the interval(s) between the multiple shots fired at the victim.  Moreover, in *Oros*, the Michigan Supreme Court did not find that multiple shots or other fatal wounds *alone* provide an opportunity for a "second look," as suggested by the state court in *Kemp*.  In fact, to illustrate insufficient evidence to show premeditation and deliberation, the Court used a case where the only evidence presented was the number of stab wounds.  *Oros*, 917 N.W.2d at 567 (citing *People v. Hoffmeister*, 229 N.W.2d 305, 308 (Mich. 1975)); *see also id.* at 569-70 (quoting *Hoffmeister*, 229 N.W.2d at 307) ("The mere fact that the killing was attended by much violence or that a great many wounds were

16

inflicted is not relevant (on the issue of premeditation and deliberation), as such a killing is just as likely (or perhaps more likely) to have been on impulse.") (internal quotation marks and footnote omitted).

Nonetheless, any error in the appellate court's interpretation or application of *Michigan* law is not a basis for finding its decision unreasonable. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Seaman v. Washington*, 506 F. App'x 349, 358 (6th Cir. 2012) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). Instead, the Court must determine whether the conviction violated the Constitution. *Estelle*, 502 U.S. at 68. Applying *Jackson* to a habeas challenge to the sufficiency of the evidence, "the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of *federal* law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (emphasis added).

Here, the jury heard testimony that Kemp and Conner were discussing the lack of gas in the truck Kemp returned to Conner when, as Conner approached Kemp, Kemp began shooting Conner. (ECF No. 8-9 at PageID 539.) Baldwin testified that the conversation was not loud. (ECF No. 8-9 at PageID 556.) Kemp testified there was no argument, and the conversation was cordial. (ECF No. 8-10 at PageID 790.) Baldwin recalled several (probably four) shots (ECF No. 8-9 at PageID 438); witnesses heard five shots (*id.* at PageID 437-38, 593) and police

located five 40 caliber shell casings, weathered the same, at the scene (*id.* at PageID 500, 503, 507).

Two shots were fired by Kemp after Conner fell to the ground. (*Id.* at PageID 540.) Three of the bullets struck Conner. (*Id.* at PageID 471.) One of the bullets entered on the left side of Conner's chest, just above the nipple, which struck only soft tissue. (*Id.* at PageID 472.). Another bullet entered Conner's left upper back, went through his left lung, and perforated his jugular vein. (*Id.* at PageID 474, 478.) The third bullet entered higher in Conner's left upper back, towards his shoulder, and went through his heart. (*Id.* at PageID 475). The two bullets that entered Conner's back were consistent with him being shot while he was turned from Kemp and were fatal. (*Id.* at PageID 477-78.) Kemp immediately fled the scene after shooting Conner. (*Id.* at PageID 547.)

Viewing all the evidence in a light most favorable to the prosecution, this Court is unable to conclude that *no* rational jury would find the elements of first-degree murder proven beyond a reasonable doubt. *See James v. Corrigan*, 85 F.4th 392, 395 (6th Cir. 2023) (citing *Jackson*, 443 U.S. at 317-19) ("Evidence is only 'insufficient' when, viewing it in the light most favorable to the state, no rational juror would find guilt beyond a reasonable doubt."). Kemp not only fired multiple shots at Conner, but two shots were fired even after Conner fell to the ground, those shots were directed and struck Conner in the left chest where they were

likely to strike—and did strike—vital organs, and they were fired while Conner had his back to Kemp. *See Thomas v. Tribley*, No. 13-cv-11877, 2015 WL 3650991, at *4-5 (E.D. Mich. June 11. 2015) (finding the petitioner's intent to kill, including premeditation and deliberation, based on the circumstances, including his use of a deadly weapon, the fact that he shot the victim multiple times, including once in the chest); *Johnson v. Rapelje*, No. 10-cv-12529, 2012 WL 2359947, at *5 (E.D. Mich. June 21, 2012) (finding the petitioner's intent to kill, including premeditation and deliberation, from the fact that he shot the victim in the chest with a deadly weapon); *Haywood v. Booker*, No. 06-cv-10927, 2009 WL 817647, at *3 (E.D. Mich. Mar. 27, 2009) (fact that the petitioner fired at the victim after the victim fell to the floor supports an inference of premeditation and deliberation); *see also Hills v. Michigan*, No. 17-1410, 2017 WL 11606785, at *3 (6th Cir. Oct. 11, 2017) (finding sufficient facts to show premeditation and deliberation including that the petitioner shot a victim multiple times in the back as the victim staggered away). Further, the fact that Kemp began shooting when Conner was turned toward Kemp, but other shots were fired when Conner was turned away, could lead a jury to find that there was time between the shots for Kemp to take a "second look." *See Hill supra*. Lastly, Kemp fled the scene after shooting Conner. *See Carter v. Vashaw*, 627 F. Supp. 3d 853, 866 (E.D. Mich. 2022) (citing *Marsack v. Howes*, 300 F. Supp. 3d 483, 492 (E.D. Mich. 2003)) (flight from the scene

19

supports a finding of premeditation and deliberation); *Thomas*, 2015 WL 3650991, at \*5 (listing the petitioner's flight from the scene as a factor supporting jury's finding of premeditation and deliberation).

Again, a federal habeas court may only reverse a state court decision "if the state court decision was objectively unreasonable." *Tackett*, 956 F.3d at 367.  To meet that standard, a state court must apply a rule that contradicts Supreme Court precedent or "confront[] facts that are materially indistinguishable from a relevant Supreme Court precedent and arrive[] at a result opposite to [that decision]." *Bell v. Cone*, 543 U.S. 447, 452-53 (2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).  A misinterpretation of state law is not "objectively unreasonable" for purposes of AEDPA.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (explaining that "federal habeas corpus relief does not lie for errors of state law"); *King v. Trippett*, 27 F. App'x 506, 510 (6th Cir. 2001) (citing *Estelle*, 502 U.S. at 67-78) (finding "that the trial court's alleged misapplication of state law was not cognizable in a federal habeas corpus proceeding").  The Michigan Court of Appeals' decision is not "contrary to . . . clearly established Federal law[.]"  28 U.S.C. § 2254(d)(1).  Finally, no such "materially indistinguishable" Supreme Court precedent mirrors the circumstances of Kemp's case.  Kemp is not entitled to habeas relief on this issue.

### IV.   Certificate of Appealability and Leave to Proceed In Forma Pauperis on Appeal

Before Kemp may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A federal district court must decide whether to issue a certificate of appealability when it issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To demonstrate such a denial, a petitioner must show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

For the reasons stated in this opinion, the Court is denying Kemp a certificate of appealability with respect to his first two grounds for relief because he fails to make a substantial showing of the denial of a federal constitutional right. Reasonable jurists would not find it debatable whether Kemp's constitutional rights were violated by admitting Baldwin's preliminary examination testimony at trial, not providing a missing-witness instruction, or precluding Kemp's counsel from asking duplicative questions to impeach Baldwin's testimony. Resolution of Kemp's third ground is a closer call, however. Therefore, the Court is granting him a certificate of appealability on this issue.

21

An appeal could be made in good faith.  Therefore, the Court is granting Kemp leave to appeal in forma pauperis.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

For the reasons stated above, the Court concludes Kemp is not entitled to federal habeas relief on his claims.

Accordingly,

**IT IS ORDERED** that Petitioner's application for the writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** with respect to Grounds I and II of the petition but **GRANTED** with respect to Ground III (whether there was sufficient evidence supporting Petitioner's first-degree murder conviction).

**IT IS FURTHER ORDERED** that leave to proceed in forma pauperis on appeal is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: February 22, 2024

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, February 22, 2024, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager

22